Richard S. Busch (SB 5615) JUDGE FURMAN   12 CIV 6072
KING & BALLOW
315 Union Street, Suite 1100
Nashville, Tennessee 37201
Telephone: (615) 259-3456
Facsimile: (615) 726-541

Kenneth E. Gordon (KG 5703)
GORDON, GORDON & SCHNAPP, P.C.
437 Madison Avenue, 39th Floor
New York, New York 10022
Telephone: (212) 355-3200
Facsimile: (212) 355-3292

Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROY THOMAS BAKER, individually, and on behalf of RTB AUDIO VISUAL PRODUCTIONS, U.S.A., the successor in interest to RTB AUDIO VISUAL PRODUCTIONS, INC., and RTB AUDIO VISUAL PRODUCTIONS, LTD., <br><br> Plaintiff, <br><br> v. <br><br> SONY MUSIC ENTERTAINMENT, <br><br> Defendant. | Case No._____ <br><br> **COMPLAINT FOR BREACH OF CONTRACT AND DECLARATORY JUDGMENT** <br><br> **DEMAND FOR JURY TRIAL** |

Plaintiff Roy Thomas Baker, individually and on behalf of RTB Audio Visual

Productions, U.S.A., by and through his attorneys, for his Complaint against the Defendant

named above alleges as follows:

1

## PARTIES

1.     Plaintiff RTB Audio Visual Productions, U.S.A. is a California Corporation with its principal place of business at 12304 Santa Monica Blvd., 3rd Floor; Los Angeles, California 90025 and is the successor in interest to RTB Audio Visual Production, Inc. and RTB Audio Visual Production, LTD., (RTB Audio Visual Productions, U.S.A. and its successors collectively referred to hereafter as "RTB").

2.     Plaintiff Roy Thomas Baker ("Baker") is a resident of West Hollywood, California, (RTB and Baker collectively referred to hereafter as "Plaintiff").

3.     Defendant Sony Music Entertainment ("Sony") is a subsidiary of Sony Corporation of America, which is a New York Corporation.  Sony's principal place of business is located at 550 Madison Avenue, New York, New York 10022.

## JURISDICTION AND VENUE

4.     The jurisdiction of this Court is based upon 28 U.S.C. § 1332 as there is complete diversity of citizenship between the parties, and the amount in controversy exceeds $75,000.00 exclusive of interest and costs.  This action for declaratory judgment is brought pursuant to 28 U.S.C. § 2201 which is within the exclusive jurisdiction of federal courts pursuant to 28 U.S.C. § 1331.  Venue is proper in the District pursuant to 28 U.S.C. §§ 1391 and 1400(a).

5.     Personal jurisdiction over Sony is proper in this Court on the grounds that (a) Sony transacts business in the State of New York; (b) Sony's wrongful conduct, alleged herein, occurred in the State of New York and in this District; and, (c) the Producer Agreement, as defined below, was entered into in this District and the parties agreed the validity, interpretation and legal effect of the Producer Agreement would be governed by the laws of the State of New York.

6.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(a)(c).

## FACTUAL ALLEGATIONS

7.      Roy Thomas Baker ("Baker") is a multiple award-winning music producer, songwriter, arranger and Recording Academy Governor, who has produced numerous Platinum and Gold certified pop and rock records from the 1970s to the present. He has produced records for artists such as Journey, Cheap Trick, The Cars, Guns N' Roses, Alice Cooper, Ozzy Osbourne, Foreigner, Queen, and perhaps most famously produced Queen's "Bohemian Rhapsody".

8.      On or about January 22, 1977, Plaintiff entered into a producer agreement (the "Producer Agreement") with Sony's predecessor CBS Records, Inc. (Sony and its predecessor are collectively referred to as "Sony" hereinafter).

9.      Pursuant to and during the terms of the foregoing Producer Agreement, Plaintiff caused certain "master" recordings of musical performances to be made and delivered to Sony, which masters Sony had agreed to manufacture, distribute, sell, and license for sale and distribution in various configurations.

10.     Among the master recordings delivered to Defendant under the Producer Agreement, were twenty-one masters recorded by the band, Journey (the "Journey Masters"). The Journey Masters Produced by Roy Thomas Baker were first released on Journey's "Infinity" and "Evolution" albums which included, among others, the hits "Feeling That Way", "Anytime", "Just The Same Way", "Wheel In The Sky", "Loving, Touchin, Squeezin" and "Lights". These recordings catapulted Journey to the status of superstars. Journey's worldwide sales, including the "Greatest Hits" album, have reached sales in excess of 80 million and the "Greatest Hits" album containing the Journey Masters Produced by Plaintiff has been on the top 200 Billboard Charts for over 887 weeks as of August 6, 2012.

3

11.     In consideration of Plaintiff's performance under the Producer Agreement, Sony agreed to pay Plaintiff under a certain royalty structure and to account to Plaintiff under that royalty structure.   In order to ensure Sony correctly accounted to and paid Plaintiff, the Producer Agreement gave Plaintiff the explicit right to inspect Sony's books and records through an audit procedure.   In conjunction with this right to audit Sony's books and records, Sony agreed to allow Plaintiff access to the "books and records with respect to such statement" provided by Sony.

12.     Pursuant to his audit rights under the Producer Agreement, Plaintiff, through the accounting firm of Hurewitz, Boschan & Co. LLP, performed an audit of Sony's books and records regarding Sony's accountings and payments to Plaintiff for the period January 1, 2007 through June 30, 2010 (the "Audit").

13.     On or about July 11, 2011, Plaintiff provided Sony with the results of the Audit, thereby providing notice of Sony's breach of the Producer Agreement.   On or about March 21, 2012, Sony responded to the Audit by falsely claiming an underpayment of only $68,384 due Plaintiff for the period in question.

14.     The Audit shows Sony has applied incorrect royalty rates and underreported royalties when calculating Plaintiff's domestic and foreign physical royalties, improperly accounted for Journey Masters leased to third-party Music Download and Mastertone Providers, incorrectly took deductions and reductions, underreported Plaintiff's album share, and did not report and/or underreported products Sony sold, licensed or otherwise received additional income from, for total underpayments plus interest in excess of $475,000 for the period audited.

15.     During the Audit, Sony failed to provide the requested documents and/or information regarding: foreign remittance taxes; invoice-level sales and other distribution reports; master rate

files; master use licensing; documentation of fees deducted by Sony's foreign affiliates; artist liability accounts; lists of worldwide Journey products; litigation settlements; a copy of the Journey artist recording agreement and label copy for certain Journey products. As a result, the audit could not fully be performed since additional amounts due could be identified upon review of the information withheld and performance of a complete audit as contemplated in the Producer Agreement. For example, since Sony did not provide the Journey artist recording agreement, the auditors could not determine whether foreign royalties were underreported to Plaintiff as a result of Sony failing to implement language contained in Paragraph 8.06 (2) of the Producer Agreement.

16.    Specifically, the Audit revealed that Sony utilized incorrect royalty rates when calculating Plaintiff's domestic and foreign physical royalties, which resulted in an underreporting to Plaintiff of $49,561 during the periods covered by the Audit. Upon information and belief, Sony's utilization of incorrect royalty rates when calculating Plaintiff's domestic and foreign physical royalties continues into the royalty periods subsequent to the Audit Period resulting in additional monetary damages not yet known to Plaintiff.

17.    With regard to domestic physical sales, Sony has routinely reported a 3% royalty rate for sales through Normal Retail Channels and a 0.71% royalty rate for sales through Club Operation instead of the respective 6% and 2% royalty rates required by the Producer Agreement. With regard to foreign physical sales, Sony reported a 3% royalty rate for all foreign sales, regardless of the territory. However, under the Producer Agreement, Plaintiff is at least entitled to a 4% royalty for sales in Canada, Germany, the UK, Asia and Australasia. Sony admits to a portion of these claims, but as a result of an alleged "over-linking" of accounts, limits their liability to only $41,386 of the estimated minimum $49,561 owed.

5

18.     The aforementioned utilization of incorrect royalty rates when calculating Plaintiff's domestic and foreign physical royalties also occurred for the royalty periods preceding the Audit, resulting in an estimated underreporting to Plaintiff in excess of $500,000 for the periods preceding the Audit. Sony intentionally concealed its failure to apply the correct royalty rate by failing to disclose and/or state in its royalty statements provided to Plaintiff the royalty rate utilized when calculating Plaintiff's domestic and foreign physical royalties.  Because of Sony's intentional non-disclosure of the royalty rate it utilized when calculating Plaintiff's domestic and foreign physical royalties and Plaintiff's reasonable reliance thereon, Plaintiff had no reasonable way of knowing Sony was failing to comply with the Producer Agreement by failing to apply the royalty rates required by the Producer Agreement and therefore the contractual statutory period should not apply to claims related to the utilization of undisclosed incorrect royalty rates.  In other words, for those prior periods, Sony fraudulently concealed the royalty rate by which it was accounting to Plaintiff in the royalty statements, and was deliberately utilizing a lower than appropriate rate.  There was no way for Plaintiff to know of this fraud by Sony because of its concealment, and Plaintiff reasonably relied to his detriment.

19.     Second, the Audit revealed that Sony charged a 25% container deduction on disc Phonograph Records (CDs) and foreign digital downloads. However, under the Producer Agreement, Sony is only entitled to deduct a container charge of 10% of the applicable Wholesale Price of such CD Phonograph Records and is not permitted to take a 25% charge for foreign digital downloads.  Sony admits to a portion of these claims, but as a result of an alleged "over-linking" of accounts, limits their liability to only $17,353 of the estimated minimum $20,780 owed. Upon information and belief, Sony's application of incorrect and unpermitted container deductions on disc Phonograph Records (CDs) and foreign digital downloads

6

continues into the royalty periods subsequent to the Audit Period resulting in additional monetary damages not yet known to Plaintiff.

20.     Third, the audit also revealed that Sony charged a configuration deduction on compact disc sales and licensed downloads, even though there is no provision in the Producer Agreement that allows for such a configuration deduction. As a result, Plaintiff's royalties were underreported in the amount of $16,562. Sony admits to a portion of this claim, but as a result of an alleged "over-linking" of accounts, limits their liability to only $13,830 of the estimated minimum $16,562 owed. Upon information and belief, Sony's application of unpermitted configuration deductions on compact disc sales and licensed downloads continues into the royalty periods subsequent to the Audit Period resulting in additional monetary damages not yet known to Plaintiff.

21.     Fourth, the Audit further revealed that, for certain Sony compilations, Sony underreported Plaintiff's album participation share by failing to correctly divide the number of Journey Masters used by the total number of Sony masters contained on the compilation, as required by the Producer Agreement, resulting in underreported royalties to Plaintiff in the amount of $7,165. Sony agrees that, with respect to foreign sales of the compilation entitled The Essential Journey, Sony reported an incorrect participation share. However, Sony denies it reported underreported album participation shares for other compilations and claims an alleged "over-linking" of accounts limits their liability to only $5,983 of the estimated minimum $7,165 owed. Upon information and belief, Sony's underreporting of Plaintiff's album participation share for certain Sony compilations continues into the royalty periods subsequent to the Audit Period resulting in additional monetary damages not yet known to Plaintiff.

22.    Fifth, the Audit revealed Sony applied deductions classified as "Oth R" deductions even though there is no provision in the Producer Agreement which provides for any such deduction. As a result, Plaintiff's royalties have been underreported in the amount of $6,212. Sony admits to this claim, but as a result of an alleged "over-linking" of accounts, limits their liability to only $5,187 of the estimated minimum $6,212 owed. Upon information and belief, Sony's application of unpermitted deductions classified as "Oth R" continues into the royalty periods subsequent to the Audit Period resulting in additional monetary damages not yet known to Plaintiff.

23.    Sixth, the Audit revealed Sony applied a midline rate reduction for the album "Greatest Hits" even though there is no provision in the Producer Agreement which allows for a midline rate reduction. As a result, Plaintiff's royalties have been underreported by $5,315. Sony admits to this claim, but as a result of an alleged "over-linking" of accounts, limits their liability to only $4,438 of the estimated minimum $5,315 owed.

24.    Seventh, the Audit revealed Sony incorrectly applied a territory rate reduction when calculating Plaintiff's royalty on foreign sales despite the Producer Agreement not providing for such reductions. Sony admits to this claim, but as a result of an alleged "over-linking" of accounts, limits their liability to only $1,270 of the estimated minimum $1,521 owed. Upon information and belief, Sony's incorrect application of territory rate reductions when calculating Plaintiff's royalty on foreign sales continues into the royalty periods subsequent to the Audit Period resulting in additional monetary damages not yet known to Plaintiff.

25.    Eighth, Sony did not report a number of items, including royalties with respect to large quantities of units that Sony categorizes as "Deduction Units," products such as additional album releases containing Journey Masters, synch uses of Journey Masters, master use licenses of Journey Masters, and income such as "service charges" received upon its delivery to music

services of metadata and music files., master use license income. Further, Sony failed to provide the requested "pending" (a.k.a. "unmatched" and "suspense") reports that capture sales activity that, for various reasons, is not reported on royalty statements to Plaintiff.

26.     Among the items described in paragraph 25 above, Sony failed to report and pay Plaintiff royalties rightfully owed him in connection with Journey's "Greatest Hits DVD 1978 – 1997," (the "Greatest Hits DVD").

27.     The Greatest Hits DVD contains certain Journey Masters produced by Plaintiff ("Wheel in the Sky," "Lights," "Lovin', Touchin', Squeezin," "Just the Same Way," and "Feeling That Way") and therefore Plaintiff is entitled to royalties in connection with Sony's distribution of the Greatest Hits DVD. Sony has never reported, accounted to, or paid Plaintiff royalties in connection with the Greatest Hits DVD, which was released in 2003, despite Sony's royalty obligations under the Producer Agreement. Sony misled Plaintiff by intentionally failing to include the Greatest Hits DVD on its royalty statements provided to Plaintiff. Because of Sony's fraudulent and intentional non-reporting of the Greatest Hits DVD on its royalty statements provided to Plaintiff and Plaintiff's reasonable reliance thereon, Plaintiff had no reasonable way of knowing Sony was not complying with the Producer Agreement in connection with the Greatest Hits DVD and therefore the contractual limitations period, as well as the statutory limitations period, should be tolled and not apply to claims related to the Greatest Hits DVD. Stated another way, Sony fraudulently and deliberately left the Greatest Hits DVD off of the royalty statements completely.  By so doing, Sony should not be able to rely on the limitations period for challenging items on the royalty statements, since this item was left off completely. Principles of fraudulent concealment, and equitable tolling should prevent the statute of

limitations from being asserted so that Plaintiff can receive his proper royalties on the total unreported sales since 2003 for this DVD distributed by Sony.

28.     In response to the Audit, Sony admitted Plaintiff produced the Journey Masters contained on the studio LPs but claimed Plaintiff did not produce the audiovisual masters contained on the Greatest Hits DVD. Sony's response is absurd and both factually and legally incorrect.  Journey did not re-record the Journey Masters contained on the Greatest Hits DVD. The Greatest Hits DVD contains those certain Journey Masters produced by Plaintiff, coupled with visual images. Under the terms of the Producer Agreement, "Phonograph Records" includes "all forms of reproduction"… "embodying sound alone or sound coupled with visual images."

29.     Furthermore, pursuant to the terms of the Producer Agreement, in the event Sony used a producer other than Plaintiff for a Journey album subsequent to an album produced by Plaintiff, Plaintiff is entitled to royalties in connection with said subsequent album as long as: (1) the albums released by Journey prior to the first album produced by Plaintiff, "Infinity", cumulatively sold less than 100,000 units as of the time Plaintiff delivered "Infinity" to Sony; and (2)  the last Journey album produced by Plaintiff, "Evolution", achieved net sales through normal retail channels in the United States in excess of 250,000 units as of the time Sony was ready to record Journey's subsequent album, "Departure."

30.     On information and belief, both of those prerequisites were met at the time "Departure" began to be recorded, but Sony breached the Producer Agreement by not paying Plaintiff royalties for "Departure." Specifically, upon information and belief: (1) the albums released by Journey prior to "Infinity" cumulatively sold less than 100,000 units as of the time Plaintiff delivered "Infinity" to Sony; and (2) "Evolution" achieved net sales through normal retail channels in the United States in excess of 250,000 units as of the time Sony was ready to record

Journey's "Departure." Sony has never reported, accounted to, or paid Plaintiff royalties in connection with the "Departure" album, which was released in 1980, despite Sony's royalty obligations under the Producer Agreement.

31.     Sony's failure to report the aforementioned items described in paragraphs 25 through 30 above has resulted in Sony underpaying Plaintiff in an amount which can only be determined after Sony has provided information in discovery. In addition, upon information and belief, Sony's failure to report the aforementioned items described in paragraphs 25 through 30 above continues into the royalty periods subsequent to the Audit Period resulting in additional monetary damages not yet known to Plaintiff.

32.     Lastly, the Audit revealed that Sony failed to properly account to and pay Plaintiff for Journey Masters leased to third-party Music Download and Mastertone Providers, such as iTunes (Apple), eMusic, amazon.com, Verizon Wireless and others.  Music Download and Mastertone Providers are third-parties that licensed (or "leased" in Sony's parlance) the Journey Masters from Sony and then distributed downloads and mastertones to end users on computers, cell phones, or other devices.

33.     The Producer Agreement contains the following "Masters Leased provision": "In respect of any Master Recording leased by [Sony] to others for their distribution of Phonograph Records in the United States, 50% of [Sony's] net receipts therefrom (after deduction of all copyright, AFM and other applicable third party payments) will be divided among you and all Artists or other Persons, entitled to royalties in respect of such Records, in the same ratio as that among your respective basic royalty percentage rates."

34.     Under the terms of the Producer Agreement, music downloads, mastertones, and ringtones are "Phonograph Records."

35.     Sony has leased the Journey Masters to third party Music Download and Mastertone Providers, so that those third party Music Download and Mastertone Providers could distribute music downloads, mastertones, and ringtones to the public in the United States. Sony received monies for this leasing and continuously and persistently failed to account to and pay Plaintiff his share of the 50% of net receipts due to Plaintiff pursuant to the terms of the Producer Agreement.

36.     Instead, Sony has systematically accounted to and paid Plaintiff for the Journey Masters leased to certain third parties, including third party Music Download and Mastertone Providers at lower royalty rates, under provisions of the Producer Agreement which are applicable only to Phonograph Records sold by Sony, and are not applicable to the leasing of the Journey Masters or any masters. Further, Sony took unwarranted and unpermitted deductions from the small amount of royalties it actually paid to Plaintiff.

37.     The Audit report provided by Plaintiff to Sony on or about July 11, 2011, specifically informed Sony of its wrongful method of paying Plaintiff in regards to Journey Masters leased to Music Download and Mastertone Providers for distribution in the United States.

38.     In response to the Audit, Sony stated that a provision of the Producer Agreement applicable to Sony's sales applied to music downloads, mastertones, and ringtones distributed and/or sold by Music Download and Mastertone Providers. In support of this position, Sony stated, "iTunes and other digital service providers and ringtone providers do not license content from Sony for sale as permanent downloads. Sony sells tracks directly to consumers through digital service providers, as Sony's agents, or the digital service providers purchase tracks wholesale and resell them to consumers (akin to a physical retail store that purchases CDs from Sony and sells them to consumers)."

39.     Sony's response to Plaintiff's Audit is both factually and legally incorrect.  Sony licenses,

or in Sony's parlance leases masters (including Journey Masters) to Music Download and

Mastertone Providers; Sony itself does not sell music downloads, mastertones, and ringtones

directly to consumers.  Instead, Sony licenses/leases masters (including Journey Masters) to

Music Download and Mastertone Providers and those Music Download and Mastertone

Providers then reproduce the masters to create music downloads, mastertones, and ringtones

which those licensees sell directly to consumers.  Sony's position was explicitly rejected in

*F.B.T. Prods., LLC v. Aftermath Records*, 621 F.3d 958 (9th Cir. 2010).

40.     Despite never raising a distinction between "licensing" and "leasing" in response to the

Audit, Sony may claim, as it has in other cases when suit has been filed against it, that "leasing"

masters under the recording agreement means something different than "licensing" masters, so

Sony does not owe plaintiff a share of 50% of net receipts even if it licensed the masters to third

parties for sale as downloads and master tones.  This assertion would be nonsense, and would be

contrary to Sony's historical practice.  Sony has paid plaintiff, and others who have similar

language in their recording agreements, 50% of net receipts on licensed income regardless of

whether the applicable recording agreement says that the artist gets 50% of receipts when Sony

"leases" masters or "licenses" masters.  In other words, Sony's historical practice shows that it

considers the leasing and licensing of master recordings to mean the same thing.

41.     The Ninth Circuit in *F.B.T. Prods., LLC v. Aftermath Records*, 621 F.3d 958 (9th Cir.

2010), held that income from Music Download and Mastertone Providers was licensing (or

leasing in Sony's parlance) income, and rejected specifically Sony's contention in response to

the F.B.T. audit that it sells masters to digital download providers.  This decision should be

followed in this action because the applicable download agreements between Sony and the

digital download providers are, upon information and belief, virtually identical in all relevant respects to the download agreements in the F.B.T. action.

42.     Sony's failure to account to and pay artists correctly for its income from Music Download and Mastertone Providers resulted in a class action, *Shropshire v. Sony Music Entertainment*, Case Number 06 Civ. 4252, being filed in the Southern District of New York. On March 7, 2012, the parties moved for preliminary approval of a proposed settlement of that action.

43.     Because the relief offered by the class action suit is wholly insufficient to make Plaintiff whole, on July 5, 2012, Plaintiff opted out of the class in order to bring his own separate claims.

44.     Sony also asserts that it is able to take a container charge deduction from the royalties paid on music downloads, mastertones, and ringtones distributed or sold by Music Download and Mastertone Providers under a provision in the Producer Agreement with respect to the applicable Wholesale Price of Phonograph Records in non-disc configurations. However, the container charge provision is not applicable to music downloads, mastertones, or ringtones leased to Music Download and Mastertone Providers. The Masters Leased royalty language is not based on the Wholesale Price or any price of any record, but on the net receipts that Sony receives. The Producer Agreement does not allow for a container charge for the leasing of Masters as Sony does not incur physical packaging costs when it leases Masters including to Music Download and Mastertone Providers.

45.     Sony's failure to correctly pay Plaintiff for music downloads, mastertones, and ringtones derived from Masters leased to Music Download and Mastertone Providers has resulted in Sony underpaying Plaintiff in an amount believed to be in excess of $200,000. Upon information and belief, Sony's failure to correctly pay Plaintiff for music downloads, mastertones, and ringtones

derived from Masters leased to Music Download and Mastertone Providers continues into the royalty periods subsequent to the Audit Period resulting in additional monetary damages not yet known to Plaintiff.

46.     For the period audited, Sony has failed to account for and pay Plaintiff in excess of $475,000. Upon information and belief, Sony's failure to properly account to and pay Plaintiff occurred and continues in the royalty periods preceding and following the Audit period which has and will continue to result in additional monetary damages not yet known to Plaintiff.

47.     In addition to Sony's failures to correctly account to and pay Plaintiff, Sony incorrectly claims that it overpaid Plaintiff $55,379 with respect to domestic digital streaming. While historically, Sony has paid Plaintiff based on 50% of Sony's net receipts, it now claims Plaintiff is only entitled to a share of the net receipts. Sony is therefore attempting to recoup more than $55,379 from Plaintiff which has the direct effect of preventing Plaintiff from collecting more than $55,379 it is owed.

48.     Further, Sony's failure to timely pay Plaintiff, as required by the Producer Agreement, has caused Plaintiff to be deprived of the use of substantial funds causing additional financial harm.

49.     Sony's failures have created a dispute in excess of $1,000,000 with respect to Sony's breach of the Producer Agreement.

## CLAIM I

### Breach of Contract

50.     Plaintiff repeats and re-alleges each of the foregoing paragraphs 1-49, as though fully set forth herein.

51.     Plaintiff and Sony have a valid and enforceable contract, the Producer Agreement. Plaintiff has fully performed all of his obligations under the Producer Agreement.

15

52.     As discussed more fully above, Sony has failed to comply with the terms of the Producer Agreement, and failed to fulfill its obligations under the Producer Agreement. Among other things, Sony's failures include, but are not limited to, applying incorrect royalty rates and underreporting royalties when calculating Plaintiff's domestic and foreign physical royalties, improperly accounting for Journey Masters leased to third-party Music Download and Mastertone Providers, incorrectly taking deductions and reductions, underreporting Plaintiff's album share, and not reporting and/or underreporting products Sony sold, licensed and otherwise received additional income from, and failing to account to and pay Plaintiff royalties in connection with the Greatest Hits DVD. In addition, Sony has failed to pay Plaintiff any of his royalties owed in connection with the "Departure" album. Sony's breaches of the Producer Agreement are continuing to this very day, constituting continuing violations of the Producer Agreement, with respect to all of the foregoing.

53.     By reason of the foregoing and other acts not presently known by Plaintiff, Sony has knowingly and materially breached its contractual obligations to Plaintiff under the Producer Agreement.

54.     Sony's material breach of the Producer Agreement is the legal cause of substantial damage to Plaintiff for which Plaintiff seeks monetary damages in an amount to be determined at the time of trial, which upon information and belief is in excess of $1,000,000.

## CLAIM II

### Declaratory Judgment

55.     Plaintiff repeats and re-alleges each of the foregoing paragraphs 1-54, as though fully set forth herein.

56.    Pursuant to 28 U.S.C. § 2201, this Court may declare the rights and other legal relations of any interested party seeking such declaration whether or not further relief is, or could be, sought.

57.    Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

58.    Plaintiff seeks a declaration that, pursuant to the Producer Agreement, Sony is obligated to pay Plaintiff his proper share of fifty percent (50%) of Sony's net receipts derived from the leasing of Masters (including Journey Masters) to others for the manufacture and/or sale of Phonograph Records or for any other uses in the United States, including but not limited to the leasing of Masters (including Journey Masters) to Music Download and Mastertone Providers.

59.    Sony denies the leasing of Masters (including Journey Masters) to Music Download and Mastertone Providers requires it to pay Plaintiff his proper share of fifty percent (50%) of Defendant's net receipts.

60.    Sony continues to lease the Journey Masters to Music Download and Mastertone Providers and receive payment from Music Download and Mastertone Providers, but, on information and belief, continues to account to Plaintiff for these leases at a royalty rate that is less than his proper share of fifty percent (50%) of Sony's net receipts from those leases.

61.    By reason of the foregoing, there is a present controversy between Plaintiff and Sony for which a declaratory judgment should be entered.

62.    Plaintiff has no adequate remedy at law.

## PRAYERS FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Sony as follows:

1.      Compensatory damages in excess of $1,000,000, the exact amount of which to be determined at the time of trial;

2.      An Order and Judgment declaring that the Producer Agreement requires Sony to account to and pay Plaintiff his proper share of fifty (50%) of net receipts for leasing of Masters (including Journey Masters), to Music Download and Mastertone Providers for distribution in the United States;

3.      An award of actual and reasonable attorneys' fees and costs for services rendered to Plaintiff in this action;

4.      An award of pre- and post-judgment interest;

5.      A trial by jury on all triable issues; and,

6.      Such other and further relief as the Court deems just and proper.


Dated: August 8, 2012                    By:      /s/Richard S. Busch_____

                                                  Richard S. Busch (SB 5613)
                                                  KING & BALLOW
                                                  315 Union Street, Suite 1100
                                                  Nashville, Tennessee 37201
                                                  Telephone:  (615) 259-3456
                                                  Facsimile:  (615) 726-541


                                         By:

                                                  Kenneth E. Gordon (KG 5703)
                                                  GORDON, GORDON & SCHNAPP, P.C.
                                                  437 Madison Avenue, 39th Floor
                                                  New York, New York 10022
                                                  Telephone:  (212) 355-3200
                                                  Facsimile:  (212) 355-3292